[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12923

_____

D.C. Docket No. 9:08-cv-80736-KAM

JANE DOE NO. 1,
JANE DOE NO. 2,

Plaintiffs-Appellees,

versus

UNITED STATES OF AMERICA,

Defendant,

ROY BLACK,
MARTIN G. WEINBERG,
JEFFREY EPSTEIN,

Intervenors-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(April 18, 2014)

Before PRYOR and MARTIN, Circuit Judges, and HONEYWELL,[*] District
Judge.

_____

[*] Honorable Charlene Edwards Honeywell, United States District Judge for the Middle District
of Florida, sitting by designation.

PRYOR, Circuit Judge:

This appeal requires us to decide two issues: whether we have jurisdiction over an interlocutory appeal by criminal defense attorneys and their client who intervened in a proceeding ancillary to a criminal investigation to claim a privilege that would prevent the disclosure of their plea negotiations; and, if so, whether a privilege bars crime victims from discovering plea negotiations. The United States investigated Jeffrey Epstein's sexual abuse of minors, but failed to confer with the victims before entering a non-prosecution agreement with Epstein. Two victims filed suit against the United States to enforce their rights under the Crime Victims' Rights Act, 18 U.S.C. § 3771, and sought to discover the correspondence between Epstein's attorneys and the United States regarding the non-prosecution agreement. Epstein and his attorneys then intervened to object to that discovery as privileged. The district court overruled their objection and ordered the United States to disclose the correspondence to the victims. After the intervenors filed this appeal, the victims moved to dismiss it for lack of jurisdiction. Because we conclude that we have jurisdiction to decide this appeal and that the plea negotiations are not privileged from discovery, we affirm.

## I. BACKGROUND

2

In 2006, the Federal Bureau of Investigation began investigating allegations that Jeffrey Epstein had sexually abused several minor girls. The United States Attorney's Office for the Southern District of Florida accepted Epstein's case for prosecution, and the Federal Bureau of Investigation issued victim notification letters to two minors, Jane Doe No. 1 and Jane Doe No. 2, in June and August 2007. Extensive plea negotiations ensued between the United States and Epstein. On September 24, 2007, the United States entered into a non-prosecution agreement with Epstein in which the United States agreed not to file any federal charges against Epstein in exchange for his offer to plead guilty to the Florida offenses of solicitation of prostitution and procurement of minors to engage in prostitution. Fla. Stat. §§ 796.07, 796.03.

Not only did the United States neglect to confer with the victims before it entered into the agreement with Epstein, it also failed to notify them of its existence for at least nine months. The United States sent post-agreement letters to the victims reporting that the "case is currently under investigation" and explaining that "[t]his can be a lengthy process and we request your continued patience while we conduct a thorough investigation." And in June 2008, the United States asked the victims to explain why federal charges should be brought against Epstein without mentioning the agreement to them.

3

On June 27, 2008, the United States informed the victims that Epstein planned to plead guilty to the Florida charges three days later, on June 30, 2008. But the United States failed to disclose that Epstein's pleas to those state charges arose from his federal non-prosecution agreement and that the pleas would bar a federal prosecution. The victims did not attend the state court proceedings.

On July 7, 2008, Jane Doe No. 1 filed a petition alleging that she was a victim of federal crimes committed by Esptein involving sex trafficking of children by fraud and enticing a minor to commit prostitution and that the United States had wrongfully excluded her from plea negotiations and violated the Crime Victims' Rights Act. 18 U.S.C. § 3771. She alleged that the United States violated her right to confer with federal prosecutors, her right to be treated with fairness, her right to receive timely notice of relevant court proceedings, and her right to receive information about restitution. The United States answered that it used its "best efforts" to comply with the rights afforded to victims under the Act, but that the Act did not apply to pre-indictment negotiations with potential federal defendants. After Jane Doe No. 2 joined the initial petition, the district court found that both women qualified as "crime victims" under the Act. 18 U.S.C. § 3771(e). Among other relief, the victims sought rescission of the non-prosecution agreement.

The victims' petition remained dormant for years while they pursued a federal civil suit against Epstein and reached a settlement agreement with him. As a basis for relief against Epstein in the civil suit, the victims relied on Epstein's waiver of his right to contest liability in the non-prosecution agreement. Over Epstein's objection, the district court in that civil suit ordered the United States to produce the documents given to Epstein's attorneys during his plea negotiations. The victims received correspondence written by the United States, but they never received any correspondence written by Epstein's attorneys during the plea negotiations with the United States.

In 2011, the victims renewed the prosecution of their petition against the United States. The victims moved to use correspondence between the United States and Esptein's attorneys during the plea negotiations to prove violations of their rights under the Act. And the victims later moved the district court to compel the United States to produce all requested discovery about the plea negotiations.

Epstein and his criminal defense attorneys, Roy Black and Martin Weinberg, moved to intervene for the limited purpose of challenging the disclosure and use of the correspondence they wrote during plea negotiations. After the district court granted their permissive intervention, Fed. R. Civ. P. 24(b), the intervenors moved for protective orders. The intervenors argued that the work-product privilege

5

protects their correspondence; that Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11 create a privilege for plea negotiations; and that their correspondence contained confidential grand jury material. They also urged the district court to recognize a common-law privilege for plea negotiations. The United States responded that the court should consider the correspondence privileged, but that it would disclose the correspondence if the court ordered it to do so.

Epstein later filed two other motions to intervene in a limited capacity—one to challenge the disclosure of grand jury materials and another to challenge any remedy that would violate constitutional and contractual rights under the non-prosecution agreement. The attorney-intervenors did not join either of these motions. The district court has not yet ruled on Epstein's motion to intervene to prevent disclosure of grand jury materials, but the district court has "allowed [him] to intervene with regard to any remedy issue concerning the non-prosecution agreement."

The district court then issued two discovery orders, both of which the intervenors challenge in this appeal. In the first, the district court denied the intervenors' motions for protective orders and granted the victims the right to proffer the correspondence between the United States and Epstein's attorneys, but

the district court reserved "ruling on the relevance or admissibility" of any of the

correspondence to prove violations of the Act. In the second, the district court

required the United States to file answers to all outstanding requests for admissions

and to produce documents in response to the requests for production by the

victims, including "any documentary material exchanged by or between the federal

government and persons or entities outside the federal government (including

without limitation all correspondence generated by or between the federal

government and Epstein's attorneys)." After the intervenors filed this interlocutory

appeal, the victims moved to dismiss the appeal for lack of jurisdiction. This Court

later entered a stay of the second order, which required the United States to

disclose the correspondence to the victims.

## II. STANDARDS OF REVIEW

Two standards of review govern the issues in this appeal. We review *de

novo* whether we have jurisdiction to decide this interlocutory appeal before

addressing the merits. *United States v. Cartwright*, 413 F.3d 1295, 1299 (11th Cir.

2005). We also review *de novo* the interpretation of the Federal Rules of Evidence.

*See United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006); *Pickett v. Iowa

Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000). And the issue of whether

to recognize a privilege under Federal Rule of Evidence 501 is a mixed question of

7

law and fact that we review *de novo*. *Adkins v. Christie*, 488 F.3d 1324, 1327 (11th Cir. 2007). But we review for clear error factual findings made by a district court. *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007).

## III. DISCUSSION

We divide our discussion in two parts. First, we explain that we have jurisdiction over this interlocutory appeal by limited intervenors who, as claimants of a privilege, challenge a disclosure order directed at the United States, a disinterested party. Second, we explain that the plea negotiations are not privileged from disclosure.

### A. We Have Jurisdiction To Decide This Interlocutory Appeal.

The victims argue that we should dismiss this appeal for lack of jurisdiction for two reasons. First, they argue that the *Perlman* doctrine, which permits a claimant of a privilege to appeal a non-final judgment, applies only to grand jury subpoenas. *Perlman v. United States*, 247 U.S. 7, 38 S. Ct. 417 (1918). Second, they argue that a decision of the Supreme Court, *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 130 S. Ct. 599 (2009), forecloses an interlocutory appeal of a denial of a claim of privilege.

8

The courts of appeals "have jurisdiction of appeals from all final decisions of the district courts of the United States, . . . except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1291. A "final decision" is one "by which a district court disassociates itself from the case," *Mohawk*, 558 U.S. at 106, 130 S. Ct. at 604–05 (2009) (alteration omitted) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42, 115 S. Ct. 1203, 1208 (1995)), and "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment," *Carpenter v. Mohawk Indus., Inc.*, 541 F.3d 1048, 1052 (11th Cir. 2008) (quoting *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1338 (11th Cir. 2007)), *aff'd*, 558 U.S. 100, 130 S. Ct. 599. Discovery orders are ordinarily not final orders that are immediately appealable. *Id.* Five notable exceptions to this rule exist: the *Perlman* doctrine; the collateral-order doctrine, *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S. Ct. 1221 (1949); a certification provided by statute,  28 U.S.C. § 1292(b); a petition for a writ of mandamus; or an appeal of a contempt citation.

The *Perlman* doctrine allows an intervenor to file an interlocutory appeal of an order denying a motion to quash a grand jury subpoena. *See, e.g.*, *In re Grand Jury Proceedings*, 832 F.2d 554, 556–58 (11th Cir. 1987). "This exception, derived from *Perlman v. United States*, . . . permits an order denying a motion to quash to

9

be 'considered final as to the injured third party who is otherwise powerless to prevent the revelation.'" *Id.* at 558 (quoting *In re Grand Jury Proceedings (Fine)*, 641 F.2d 199, 202 (5th Cir. Unit A Mar. 1981)). Under *Perlman*, "a discovery order directed at a disinterested third party is treated as an immediately appealable final order because the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 18 n.11, 113 S. Ct. 447, 452 n.11 (1992); *see also In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001*, 490 F.3d 99, 106 (2d Cir. 2007) ("[T]he *Perlman* exception is relevant only to appeals brought by the holder of a privilege where the disputed subpoena is directed at *someone else*."). We have exercised jurisdiction under the *Perlman* doctrine when the party ordered to disclose the information "has no direct and personal interest in the suppression of the information" and would be reluctant to risk a contempt citation, such that "the order is definitely final as to the [claimant of the privilege]." *Fine*, 641 F.2d at 201–02. We have not invoked the *Perlman* doctrine to exercise jurisdiction over an interlocutory appeal outside the context of a grand jury proceeding. *See, e.g.*, *In re Fed. Grand Jury Proceedings (Cohen)*, 975 F.2d 1488, 1491–92 (11th Cir. 1992); *In re Grand Jury Proceedings*, 832 F.2d at 558; *Fine*, 641 F.2d at 201–02. But we have exercised jurisdiction over interlocutory appeals by claimants of a privilege in

some civil proceedings. *See Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1465–66 (11th Cir. 1984) (exercising jurisdiction because the appellant "claims a privilege of non-disclosure relating to materials that *another party* has been directed to produce"); *Int'l Horizons, Inc. v. Comm. of Unsecured Creditors (In re Int'l Horizons, Inc.)*, 689 F.2d 996, 1001–02 (11th Cir. 1982) (holding that an order compelling production of allegedly privileged material is immediately appealable because "the privilege-holder has no power to compel the custodian of the material to risk a contempt citation for his refusal to comply" (internal quotation marks omitted)); *Overby v. United States Fid. & Guar. Co.*, 224 F.2d 158, 162 & n.5 (5th Cir. 1955) (exercising interlocutory jurisdiction and citing *Perlman* in a civil action to recover damages for breach of a bond against a surety company where "denial of the privilege could [not] be reviewed on appeal either from the final judgment or from a contempt order").

The victims argue that we should not extend *Perlman* beyond an intervenor's appeal of a grand jury subpoena, but we decline to draw an arbitrary line. The victims' argument has an ipse dixit quality—that is, because our Court has never before applied the *Perlman* doctrine outside of the grand jury context, we should not do so now. But we must ask instead whether applying the doctrine here makes sense.

11

The logic of the *Perlman* doctrine applies with equal force in this appeal. Like a claimant objecting to a grand jury subpoena cannot challenge an indictment to remedy the disclosure of his privileged information, the intervenors cannot challenge a final judgment in this proceeding to remedy the disclosure of their plea negotiations. And the victims' petition, like a grand jury proceeding, is ancillary to a criminal investigation. The rights and remedies provided by the Act arise in a criminal prosecution and affect how the United States prosecutes that action. *See* 18 U.S.C. § 3771 (a), (d).

The victims argue that Epstein has made himself an ordinary litigant through his intervention, but we disagree. The district court has allowed Epstein's attorneys to intervene only to contest the disclosure of their correspondence, and the district court has granted Epstein limited intervention to challenge only the disclosure of his attorneys' correspondence and any remedy that involves the non-prosecution agreement. Epstein's only opportunity to challenge the disclosure order is *now* because there will not be an adverse judgment against him or his attorneys. The district court instead will enter any judgment against either the victims or the United States. And, even if the victims succeed in their petition to rescind the non-prosecution agreement, Epstein can challenge only that remedy, not the judgment against the United States. The victims intend to use the correspondence from

12

Epstein's attorneys to prove that the United States violated the Act, which is an issue separate from the kind of relief necessary to remedy that violation. And it is all the more likely that the district court would fashion a remedy that does not involve the non-prosecution agreement, if the district court were to conclude that rescission is unavailable, which might then bar an appeal by Epstein of that remedy.

The intervenors claim a privilege, and only claimants of a privilege may appeal under the *Perlman* doctrine. *In re Grand Jury Proceedings*, 832 F.2d at 558–59. Contrary to the victims' argument, jurisdiction under the *Perlman* doctrine does not rise or fall with the merits of an appellant's underlying claim for relief. *See, e.g.*, *id.* at 558–60 (permitting an interlocutory appeal based on *Perlman*, but holding that "we find that the privilege asserted by appellants is without a basis in Florida law" and that appellants "have no privilege of nondisclosure under state law"); *Ross v. City of Memphis*, 423 F.3d 596, 599 (6th Cir. 2005) ("[*Perlman*] jurisdiction does not depend on the validity of the appellant's underlying claims for relief."); *see also*, *e.g.*, *Perlman*, 247 U.S. at 13–15, 38 S. Ct. at 420 (reviewing Perlman's claim on interlocutory appeal, but finding no violation of the Fifth Amendment in later use by the United States of exhibits made public in previous litigation). The intervenors claim a privilege based on Rule 410, the work-product

13

privilege, and the Sixth Amendment right to effective assistance of counsel as well as a new common-law privilege for plea negotiations. These claims of privilege, however tenuous, are sufficient to establish jurisdiction under *Perlman*.

Absent an interlocutory appeal, the intervenors would be left with no recourse to appeal the disclosure order. The intervenors cannot defy the disclosure order and risk a contempt citation because the order is directed at the United States, which has expressed an intent to comply with the order. The United States is a disinterested party because it does not purport to hold the privilege claimed by the intervenors. Even if the United States earlier shared the common goal of resolving the criminal investigation quickly and without a federal indictment, any interest of the United States in asserting a privilege for plea negotiations dissipated when Epstein disclosed the correspondence written by the United States to the victims in the civil suit.

The intervenors are also likely unable to pursue their claims through the remaining "established mechanisms for [immediate] appellate review." *See Mohawk*, 558 U.S. at 112, 130 S. Ct. at 608. Because a crime victim's petition under the Act arises in a criminal action, the text of section 1292(b), which applies to a "civil action," renders a certification of this appeal unavailable. *See also In re Grand Jury Proceedings*, 832 F.2d at 557 (holding that grand jury proceedings are

14

not civil actions for purposes of section 1292(b)). And if the intervenors were to seek a writ of mandamus, it is unlikely that the disclosure order would amount to a "judicial usurpation of power or a clear abuse of discretion" or "otherwise work[] a manifest injustice." *Mohawk*, 558 U.S. at 111, 130 S. Ct. at 607 (internal quotation marks omitted).

The victims argue that, even if the logic of the *Perlman* doctrine applies here, the decision of the Supreme Court in *Mohawk* forecloses this interlocutory appeal, but they misconstrue both the decision in *Mohawk* and the *Perlman* doctrine. *Mohawk* considered whether the Court had jurisdiction under the collateral-order doctrine, which provides an exception to the general bar of interlocutory appeals if an order "(1) conclusively determines the disputed question; (2) resolves an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from a final judgment." *Id.* at 105, 130 S. Ct. at 604. In *Mohawk*, the Supreme Court foreclosed an interlocutory appeal of an order requiring the disclosure of materials protected by the attorney-client privilege because the claimant was a party who could appeal a final judgment. *Id.* at 114, 130 S. Ct. at 609. The Supreme Court explained that an appeal from a final judgment suffices "to protect the rights of litigants and ensure the vitality of the attorney-client privilege" because "[a]ppellate courts can remedy

15

the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." *Id.* at 109, 130 S. Ct. at 606–07. The Court found unpersuasive that these disclosures may "have implications beyond the case at hand" and ruled that, although imperfect, postjudgment review is sufficient. *Id.* at 108–12, 130 S. Ct. at 606–09. The Court also explained that three traditional routes of immediate review could still afford the claimant of the privilege adequate relief in a civil action: the claimant could ask the district court to certify the appeal of "a controlling question of law," the resolution of which "may materially advance the ultimate termination of the litigation"; the claimant could petition the court of appeals for a writ of mandamus; or the claimant could defy a disclosure order and appeal a sanction for contempt. *Id.* at 110–11, 130 S. Ct. at 607–08 (internal quotations marks omitted). The Supreme Court in *Mohawk* never cited *Perlman* nor discussed appeals by claimants of a privilege who are limited intervenors in a proceeding ancillary to a criminal investigation and seek to prevent the disclosure of information held by a disinterested party. *See In re Grand Jury*, 705 F.3d 133, 146 (3d Cir. 2012) ("[T]he *Mohawk* Court . . . did not discuss, mention, or even cite *Perlman*. . . ."). Understandably so—claimants of a privilege under the

16

*Perlman* doctrine remain "powerless to avert the mischief of [a discovery] order," *Perlman*, 247 U.S. at 12–13, 38 S. Ct. at 419, because the materials in question are held by a disinterested party who is likely "to forgo suffering a contempt citation and appealing in favor of disclosure," *United States v. Krane*, 625 F.3d 568, 573 (9th Cir. 2010). As the Seventh Circuit explained about the scope of the *Perlman* doctrine after *Mohawk*, "[o]nly when the person who asserts a privilege is a non-litigant will an appeal from a final decision be inadequate." *Wilson v. O'Brien*, 621 F.3d 641, 643 (7th Cir. 2010); *see also In re Grand Jury*, 705 F.3d at 145–46 & n.11 (rejecting that *Mohawk* narrowed *Perlman* "at least in the grand jury context"); *Holt-Orsted v. City of Dickson*, 641 F.3d 230, 239 (6th Cir. 2011) (recognizing that *Perlman* jurisdiction remains when a nonparty asserts a privilege); *Krane*, 625 F.3d at 572 (ruling that "*Perlman* and *Mohawk* are not in tension" when the claimant of a privilege is not a party). *But see United States v. Copar Pumice Co., Inc.*, 714 F.3d 1197, 1207–09 (10th Cir. 2013) (holding that jurisdiction under the *Perlman* doctrine is limited to only the grand jury context, but declining jurisdiction because the privilege holder was also a party to the litigation). And, as we explained above, the intervenors cannot appeal a final judgment against the United States, which leaves them without an avenue to appeal their denial of their claims of privilege.

17

*B. The Intervenors' Correspondence Is Not Privileged.*

The intervenors argue that the district court erred when it ordered the disclosure of the plea negotiations because three privileges protect the correspondence: a privilege under Federal Rule of Evidence 410, the work-product privilege of attorneys, and a common-law privilege for plea negotiations in criminal proceedings. We disagree. No privilege prevents the disclosure of the plea negotiations.

1. Federal Rule of Evidence 410 Provides No Privilege for Plea Negotiations.

Federal Rule of Evidence 410 does not protect against the discoverability of plea negotiations and, even if it did, Epstein clearly falls outside its protection because he entered a guilty plea and the victims intend to use the correspondence against the United States, not against Epstein. Rule 410 "create[s], in effect, a privilege of the defendant," *United States v. Mezzanatto*, 513 U.S. 196, 205, 115 S. Ct. 797, 803 (1995) (internal quotation marks and alteration omitted), but not a privilege of non-disclosure as the intervenors assert. The text of Rule 410 unambiguously states that the evidence "is not admissible against the defendant who made the plea or participated in the plea discussions" if the "guilty plea . . . was later withdrawn" or "did not result in a guilty plea." Fed. R. Evid. 410(a). Rule 410 governs the admissibility of plea negotiations, not the discoverability of them.

18

Moreover, Epstein cannot invoke Rule 410 because he pleaded guilty to state charges based on the same conduct and has not withdrawn those pleas. *See, e.g., United States v. Holmes*, 794 F.2d 345, 349 (8th Cir. 1986) (admitting guilty plea from state court in federal proceeding). The victims intend to admit the correspondence to prove violations of the Act allegedly committed by the United States, not "against" Epstein. And even if rescission of the non-prosecution agreement abuts Epstein's interests, the purpose of the admission does not change. Rule 410 does not bar disclosure of the correspondence written by the attorney-intervenors.

### 2. The Intervenors Waived Any Work-Product Privilege.

The intervenors next contend that the correspondence falls under the work-product privilege, but the finding of the district court that the intervenors waived any privilege when they voluntarily sent the correspondence to the United States during the plea negotiations is not clearly erroneous. Disclosure of work-product materials to an adversary waives the work-product privilege. *See*, *e.g.*, *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir. 1988); *In re Doe*, 662 F.2d 1073, 1081–82 (4th Cir. 1981). Even if it shared the common goal of reaching a quick settlement, the United States was undoubtedly adverse to Epstein during its investigation of him for federal offenses,

19

and the intervenors' disclosure of their work product waived any claim of privilege.

As a last-ditch effort, the intervenors contend that "[i]f more is needed in addition to the plain language of Rule 410 to preclude disclosure of the correspondence to plaintiffs, it can be found in the conjunction of Rule 410, the work-product privilege, and the Sixth Amendment right to the effective assistance of counsel in the plea bargaining process," but this novel argument fails too. As explained above, Rule 410 does not create a privilege and the intervenors waived any work-product privilege. The intervenors concede too that the right to counsel under the Sixth Amendment had not yet attached when the correspondence was exchanged. *Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1195 (11th Cir. 2003) ("[T]he Sixth Amendment right to counsel ordinarily does not arise until there is a formal commitment by the government to prosecute," such as a "formal charge, preliminary hearing, indictment, information, or arraignment."). The "conjunctive" power of three false claims of privilege does not rescue the correspondence from disclosure.

3. We Decline To Recognize a Common-Law Privilege for Plea Negotiations.

The intervenors also invite us to recognize a common law privilege for plea negotiations, Fed. R. Evid. 501, but we decline to do so. The intervenors have not

20

established a "compelling justification" to prevent the discovery of plea

negotiations in criminal proceedings, *In re Int'l Horizons*, 689 F.2d at 1004.

Although Congress empowered the federal courts through Rule 501 to "continue

the evolutionary development of testimonial privileges," *Trammel v. United States*,

445 U.S. 40, 47, 100 S. Ct. 906, 910 (1980), we disfavor newly minted privileges,

which "contravene the fundamental principle that the public has a right to every

man's evidence," *Adkins v. Christie*, 488 F.3d 1324, 1328 (11th Cir. 2007)

(quoting *Univ. of Pa. v. EEOC*, 493 U.S. 182, 189, 110 S. Ct. 577, 582 (1990)).

"Accordingly, there is a presumption against privileges which may only be

overcome when it would achieve a 'public good transcending the normally

predominant principle of utilizing all rational means for ascertaining truth.'" *Id.*

(quoting *Trammel*, 445 U.S. at 50, 100 S. Ct. at 912).

The Supreme Court has identified several considerations relevant to whether

a court should recognize an evidentiary privilege—the needs of the public, whether

the privilege is rooted in the imperative for confidence and trust, the evidentiary

benefit of the denial of the privilege, and any consensus among the states, *Jaffee v.

Redmond*, 518 U.S. 1, 10–15, 116 S. Ct. 1923, 1928–31 (1996)—but none of these

considerations weighs in favor of recognizing a new privilege to prevent discovery

of the plea negotiations. Although plea negotiations are vital to the functioning of

21

the criminal justice system, a prosecutor and target of a criminal investigation do not enjoy a relationship of confidence and trust when they negotiate. Their adversarial relationship, unlike the confidential relationship of a doctor and patient or attorney and client, warrants no privilege beyond the terms of Rule 410. *See Jaffee*, 518 U.S. at 10, 116 S. Ct. at 1928. But the victims would enjoy an evidentiary benefit from the disclosure of plea negotiations to prove whether the United States violated their rights under the Act. As for any consensus among the states, the majority of the state statutes the intervenors cite adopted Rule 410 verbatim. *Compare*, *e.g.*, Fla. Stat. § 90.410 ("Evidence of a plea of guilty, later withdrawn; a plea of nolo contendere; or an offer to plead guilty or nolo contendere to the crime charged or any other crime is inadmissible in any civil or criminal proceeding."), *with* Fed. R. Evid. 410.

Even if we were to accept the intervenors' argument that plea negotiations are de facto confidential in criminal practice, that custom alone would not protect them from discovery because Rule 410 militates against the establishment of a new privilege. The Supreme Court has cautioned federal courts to be "especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself." *Univ. of Pa.*, 493 U.S. at 189. Congress weighed the evidentiary concerns

related to criminal plea negotiations when it enacted Rule 410, which enables a

defendant to negotiate without fear that the prosecutor will use his statements

against him. Rule 410 contemplates that plea negotiations should ordinarily be

inadmissible against a defendant, but not always. The rule does not bar the

admission of plea negotiations, for example, when the defendant pleads guilty, in a

proceeding for perjury, or when the defendant introduces the statements so long as

they are not self-serving hearsay. If we were to recognize a privilege for plea

negotiations, we would upset the balance that Congress struck when it adopted

Rule 410. *See In re MSTG, Inc.*, 675 F.3d 1337, 1344 (Fed. Cir. 2012) (rejecting a

privilege for settlement negotiations because Congress, by enacting Rule 408, "did

not take the additional step of protecting settlement negotiations from discovery.").

We will not go further than Congress stated was necessary to promote the public

good in criminal plea negotiations.

## IV. CONCLUSION

We **AFFIRM** the disclosure order and **LIFT** the stay of the order

compelling the United States to disclose the correspondence.